UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSS BRIAN ELLISON,<br><br>    Petitioner,<br><br>  v.<br><br>D.K. SISTO,<br><br>    Respondent. | No. 2:06-CV-2740-FVS<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |

**THIS MATTER** comes before the Court on Petitioner's Amended Petition For Writ of Habeas Corpus. (Ct. Rec. 22). Petitioner is proceeding pro se. Respondent is represented by Janis Shank McLean, an Assistant Attorney General for the State of California.

**BACKGROUND**

At the time his petition was filed, Petitioner was in the custody of the California State Prison, Solano, in Vacaville, California, pursuant to his 2004 Yolo County conviction for one count of inflicting corporal injury on his child's mother (Count 1) and one count of misdemeanor child abuse or endangerment (Count 2). The court sentenced Petitioner to an 11-year prison term which was comprised of an upper-term sentence of four years on Count 1, doubled based on a prior strike under Cal. Penal Code § 667(e)(1), plus three consecutive

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 1

one-year sentences for each of his three prior prison terms. Petitioner challenges his sentence.

**I.   Factual History**

Respondent described the facts of this case as follows:

> On September 8, 2002, at 3:00 or 4:00 a.m., Petitioner knocked on the door of Mary Ann Hannenan's mobile home. (1 RT 83.) Petitioner asked Hannenan whether her daughter, Michelle Rodriguez, was there. (1 RT 85.) Petitioner and Rodriguez had a daughter, Raquel, together, and they had lived together for several years. (1 RT 82-83, 98.) Hannenan had not seen or spoken with Petitioner for six years because he was incarcerated during that time. (1 RT 83-84, 209.)
>
> Hannenan believed that Petitioner had been drinking. She did not tell him where Rodriguez was living, and as soon as he left, she called her daughter. (1 RT 85, 87-88.) Rodriguez testified that, when her mother called, she sounded worried. Hannenan told Rodriguez that Petitioner was looking for her and that she should leave. (1 RT 105.) Rodriguez's daughter, who was ten years old, was spending the night at a friend's house, and Rodriguez's boyfriend was with Rodriguez at her West Sacramento apartment that night. (1 RT 104, 149.) Rodriguez and her boyfriend left the apartment and went to a motel room. (1 RT 105-106.)
>
> When Rodriguez returned to her apartment later that day, she found that the door, which she had locked when she left, had been kicked open. There was a footprint on the door. (1 RT 106-107.) Rodriguez assumed it was Petitioner who forced her door open. (1 RT 152.) A mutual friend told Rodriguez that Petitioner was looking for her. Rodriguez was with her sister-in-law, Samantha, that afternoon, and Samantha spoke to her mother, Victoria Aguilar, on the phone. Aguilar told Samantha that Petitioner was at her house. (1 RT 109-110, 122.) Rodriguez called Petitioner that afternoon, and Petitioner said that he wanted to see Raquel, whom he had not seen in six years. (1 RT 111.) Rodriguez was somewhat apprehensive because Petitioner sounded drunk and angry. Petitioner convinced her that he just wanted to see his daughter, so Rodriguez agreed to take Raquel to see him. (1 RT 112, 115.)
>
> Samantha drove Rodriguez to Aguilar's apartment. Rodriguez and Raquel got out, and when Petitioner saw them, he patted Raquel's head and walked toward Rodriguez with his arms out as though he were going to hug her. (1 RT 116-119.) Petitioner mouthed the words to Rodriguez, "I'm going to kick your ass." (1 RT 118.) Petitioner grabbed Rodriguez by the hair and pulled her to the ground. He punched her twice on the head, once on her forehead and once toward the back of her head behind her ear. (1 RT 120-122.)

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 2

Aguilar, who had gone outside, jumped on Petitioner, and Rodriguez was able to get free. (1 RT 135-137.) She grabbed Raquel and got into Samantha's car. Raquel was screaming and crying. As Samantha drove them away, Petitioner tried to stop them by hitting the passenger side window where Rodriguez was sitting. (1 RT 138-139.) Rodriguez called her brother on her cell phone and told him to meet her at the West Sacramento Police station. (1 RT 140.)

Officer Kenneth Fellows was at the police station when Rodriguez arrived. (1 RT 219.) She told Officer Fellows that Petitioner hit her on the back of her head by her ear and on the right side of her forehead. (1 RT 220.) When the officer touched the two areas, Rodriguez winced in pain. He observed a bump and redness over her right eye, and he could feel a lump behind her ear which was inside her hairline. (1 RT 221-223, 231.)

Rodriguez told Officer Fellows that, when her mother called to tell her Petitioner was looking for her, she said that Petitioner threatened to hurt Rodriguez. (1 RT 223.) She said that, when she saw Petitioner and he lipped that he would "kick her ass," she instantly knew "that was not a good sign." She had her back turned when Petitioner grabbed her, and after he took her to the ground, she felt him strike her twice on her head with his fist. (1 RT 224.) Rodriguez told the officer where she thought Petitioner might be. (1 RT 142.)

Officer Fellows and Officer Eugene Semeryuk were among the officers who went to arrest Petitioner. (1 RT 226, 238.) When the police arrived, Petitioner was standing in the doorway. He saw the police and closed and locked the door. (1 RT 226.) Petitioner went out the back door and started to climb over the fence. (1 RT 238-239.) Officer Semeryuk, who arrested Petitioner, observed that his eyes were red, he had a strong odor of alcohol, he was staggering, and his speech was slurred. (1 RT 239-240.) The officer concluded that Petitioner was very intoxicated. (1 RT 239.)

Detective Eric Thruelsen, who was in charge of the Domestic Violence Response Team, interviewed Rodriguez several days after the assault. (1 RT 242-243.) She said that the reason Petitioner attacked her was that she had not put money on his books while he was incarcerated. (1 RT 245.) At trial, Rodriguez testified that she did not remember saying that, and she did not know why Petitioner punched her. (1 RT 208-209.) She also admitted that she did not want to be in court testifying against Petitioner, that she did not think Petitioner deserved to go to prison, and that Raquel had been seeing Petitioner every weekend and she is "over it." (1 RT 145-146.)

Rodriguez also testified that she did not go to the motel that morning because she was afraid that Petitioner would harm

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 3

her or Raquel, she simply was not emotionally ready to see Petitioner after all those years, and she did not want to make her current boyfriend jealous. (1 RT 149-151.) She stated that she will always love Petitioner. (1 RT 150.)

When Hannenan spoke to an investigator with the district attorney's office several months after the assault, she said that, after Petitioner came looking for her daughter early that morning, she immediately contacted Rodriguez because she was afraid that if Petitioner found her he would hurt her. She thought Petitioner had been drinking, but she told the investigator that "he's never nice." (1 RT 247-248.)

**Defense**

Victoria Aguilar testified that, when her daughter Samantha brought Rodriguez and Raquel over to her apartment to see Petitioner that afternoon, she heard Rodriguez and Petitioner outside yelling at each other so she went outside. (1 RT 250-252.) She put her arms around Petitioner to restrain him, and they went to the ground. She thought Rodriguez went to the ground, too, but Aguilar did not see Petitioner hit her. (1 RT 253-254, 257.) Aguilar testified that Petitioner was at her house that afternoon, drinking. (1 RT 258.)

A friend of Aguilar and Petitioner was also at Aguilar's that afternoon. (1 RT 267-268.) She heard the yelling after Rodriguez arrived with Raquel, and she saw Aguilar restrain Petitioner. (1 RT 269-270.) Aguilar and Petitioner went to the ground, and another woman who was outside jumped on top of them, but she never saw Rodriguez on the ground. (1 RT 270-272, 293.) She did not see anyone get hit. (1 RT 273.)

It was stipulated that Petitioner had "more than enough money" in his account while he was incarcerated, and he did not need money from Rodriguez. (2 RT 302.)

(Ct. Rec. 26 at 5-8).

**II. Procedural History**

Petitioner was convicted following a jury trial of one count of inflicting corporal injury on his child's mother (Cal. Penal Code § 273.5(a)) and one count of misdemeanor child abuse or endangerment (Cal. Penal Code § 273a(b)).  In bifurcated proceedings, the trial court found a prior conviction as a strike prior (Cal. Penal Code § 667(c), (e)(1)) and three prior prison terms (Cal. Penal Code §

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 4

667.5(b)) allegations to be true. Petitioner was sentenced to state prison for a term of 11 years on June 28, 2004.

Petitioner appealed from his convictions and sentence to the California Court of Appeal, Third Appellate District. On July 13, 2005, the California Court of Appeal affirmed Petitioner's judgment and sentence. *People v. Ellison*, 2005 WL 1635188 at *1.

Petitioner thereafter sought review by the California Supreme Court. The California Supreme Court denied Petitioner's request for review on September 28, 2005.

On December 5, 2006, Petitioner filed a petition for writ of habeas corpus asking for federal review. (Ct. Rec. 1). Respondent was ordered to file a response to the petition on January 9, 2007. (Ct. Rec. 6). Respondent's answer was filed on March 7, 2007 (Ct. Rec. 10) and Petitioner filed a traverse on June 18, 2007 (Ct. Rec. 16).

On May 13, 2008, the Court granted Petitioner additional time to file an amended petition including recently exhausted claims.[1] (Ct. Rec. 21). Petitioner's amended petition was filed on June 6, 2008. (Ct. Rec. 22). Respondent filed an answer on August 22, 2008 (Ct. Rec. 26) and Petitioner's traverse was received by the Court on November 3, 2008 (Ct. Rec. 30).

Petitioner's amended petition (Ct. Rec. 22) is now before the Court.

---

[1] On November 28, 2007, the Supreme Court of California denied Petitioner's writ of habeas corpus petition citing *In re Swain*, 34 Cal.2d 300, 304 (1949) and *People v. Duyvall*, 9 Cal.4th 464, 474 (1995).

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 5

**ISSUES**

Petitioner presents the following grounds for relief:

1. Trial court violated Petitioner's federal constitutional rights to proof beyond a reasonable doubt and a jury trial . . . because the aggravating factors were neither admitted by Ellison nor found true by a jury.

2. Ineffective assistance of counsel by trial attorney.

3. Ineffective assistance of counsel by appellate attorney.

(Ct. Rec. 22).

**DISCUSSION**

**I. Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief if a state court adjudication resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence.  28 U.S.C. § 2254(d); *see, Williams v. Taylor*, 529 U.S. 362, 399, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). "Clearly established federal law" consists of "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Anderson v. Terhune*, 516 F.3d 781, 798 (9th Cir. 2008) (citing *Lockyer v. Andrade*, 538 U.S. 63, 70-73, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)).  A decision is "contrary to" clearly established federal law in two circumstances. First, a state court decision is contrary to clearly established federal law when "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams*, 529 U.S.

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 6

at 405, 120 S.Ct. at 1519, 146 L.Ed.2d at 425. Second, a state court decision is "contrary to" clearly established federal law when the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* at 412-413, 120 S.Ct. at 1523, 146 L.Ed.2d at 430. A state court unreasonably applies clearly established federal law when it applies the law in a manner that is "objectively unreasonable." *Id.* at 409. "AEDPA does not require a federal habeas court to adopt any one methodology in deciding the only question that matters under § 2254(d)(1) - whether a state court decision is contrary to, or involved an unreasonable application of, clearly established federal law." *Lockyer*, 538 U.S. at 71.

Furthermore, habeas relief is warranted only if a constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)); *Bains v. Cambra*, 204 F.3d 964, 977-978 (9th Cir.) *cert. denied*, 531 U.S. 1037, 121 S.Ct. 627, 148 L.Ed.2d 536 (2000). Petitioner is entitled to habeas relief only if he can show that any constitutional violation "resulted in 'actual prejudice.'" *Brecht*, 507 U.S. at 619.

In examining whether state courts reached a decision that was contrary to federal law or whether the state court unreasonably applied such law, the court should look to the last reasoned state

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 7

court decision. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002) *cert*. dismissed, 538 U.S. 919, 123 S.Ct. 1571, 155 L.Ed.2d 308 (2003). Where no reasoning is given in either the state court of appeals or the state supreme court, Ninth Circuit Courts must determine whether a state court's decision was objectively unreasonable based on an independent review of the record. *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003) (quoting Delgado v. Lewis, 223 F.3d 976, 981-982 (9th Cir. 2000). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Id.*

Here, the last reasoned decision from a California state court is the decision of the California Court of Appeal. However, the California Court of Appeal only considered claim one of the amended petition. Petitioner's claims two and three were only presented to the California Supreme Court in a habeas corpus petition, and the California Supreme Court's decision was not released with a reasoned opinion. Therefore, this Court shall examine the appellate court's decision to determine whether there existed a contrary or unreasonable application of federal law at the state level with regard to claim one. However, because the California Supreme Court did not release a reasoned decision with regard to Petitioner's claims two and three, this Court must make an independent review of the record in determining whether there existed a contrary or unreasonable application of federal law at the state level with regard to those claims.

**II.  Constitutionality Of "Upper-Term" Sentence**

In claim one, Petitioner argues that the imposition of an "upper-term" sentence violated his due process rights and right to a jury trial.  Petitioner contends that his "upper-term" sentence was imposed in violation of *Blakely v. Washington*, 542 U.S. 296 (2004) and *United States v. Booker*, 543 U.S. 220 (2005).

Petitioner was sentenced to a total of 11 years in state prison.  He was sentenced to eight years on count one, that being twice the upper term of four years.  In addition, he was sentenced to three consecutive 1-year terms.  *Ellison*, 2005 WL 1635188 at *1.

At the time that Petitioner was sentenced, Cal. Penal Code § 1170(b), part of California's "Determinate Sentencing Law" or "DSL," specified that "[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime."  The California Rules of Court, Cal. R. Ct. 4.420(b), specified that "circumstances in aggravation and mitigation must be established by a preponderance of the evidence," and "[s]election of the upper term is justified only if, after a consideration of all the relevant facts, the circumstances in aggravation outweigh the circumstances in mitigation."

A non-exhaustive list of aggravating factors found in the California Rules of Court, and relied upon by a sentencing judge, include: 1) the crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness; 2) the defendant has engaged in

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 9

violent conduct that indicates a serious danger to society; 3) the defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness; 4) the defendant has served a prior prison term; and 5) the defendant was on probation or parole when the crime was committed. Cal. R. Ct. 4.421.

In Petitioner's case, the sentencing judge selected the upper term of four years on count one, finding that certain aggravated circumstances had been established by a preponderance of the evidence. The court then doubled that upper term as statutorily required pursuant to Cal. Penal Code § 667(e)(1) and § 1170.12(c)(1) (if a defendant has one prior felony conviction that has been pled and proved, the determinate term or minimum term for an indeterminate term shall be twice the term otherwise provided as punishment for the current felony conviction).

In *People v. Black* ("*Black I*"), 35 Cal. 4th 1238, 29 Cal. Rptr. 3d 740, 113 P.3d 534 (2005), the California Supreme Court held California's DSL and the upper term sentencing procedure was not invalidated by the U.S. Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296, 304-305, 124 S.Ct. 2531 (2004). However, in *Cunningham v. California*, 549 U.S. 270, 127 S.Ct. 856 (2007), the U.S. Supreme Court vacated *Black* and held that by placing sentence-elevating factfinding within the judge's province, California's DSL violates a defendant's Sixth and Fourteenth Amendment rights to trial by jury. The Court found that in all material respects, California's

///

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 10

DSL resembled the sentencing systems invalidated in *Blakely* and *Booker*.

In *Butler v. Curry*, 528 F.3d 624, 639 (9th Cir. 2008), the Ninth Circuit Court of Appeals found that *Cunningham* did not announce a new rule of constitutional law within the meaning of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060 (1989), and therefore, could be applied retroactively on collateral review.  In the case at bar, Petitioner's conviction did not become final until after September 28, 2005, when the California Supreme Court denied his petition for review.[2]  At that time, *Blakely* (2004) and *Booker* (2005), as well as *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000), represented clearly established law that sentencing schemes that raise the maximum possible term based on facts not found by a jury violate the constitutional rights of a defendant.  *Butler*, 528 F.3d at 639.  Consequently, with regard to Petitioner, *Cunningham* did not announce a new rule of constitutional law and may be applied retroactively to him on collateral review.

Nonetheless, the Court finds that Petitioner's four year upper term sentence on count one does not violate the Sixth Amendment.  Prior convictions are excepted from the requirement that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury.  *Apprendi*, 530 U.S. at 490.  Under California law, only one aggravating factor is necessary to set

---

[2] Petitioner's conviction became final on December 27, 2005, 90 days after expiration of the period to file a petition for writ of certiorari with the United States Supreme Court.  *United States v. Garcia*, 210 F.3d 1058, 1059-1060 (9th Cir. 2000).

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 11

the upper term as the maximum sentence. *Butler*, 528 F.3d at 641; *People v. Black* ("*Black II*"), 41 Cal. 4th 799, 815, 62 Cal.Rptr. 3d 569, 161 P.3d 1130 (2007). In *Black II*, the California Supreme Court concluded that the defendant's sentence was not unconstitutional because reliance on a prior conviction was appropriate per the United States Supreme Court's decision in *Almendarez-Torres v. United States*, 523 U.S. 224, 244, 118 S.Ct. 1219 (1998), holding that the fact of a prior conviction need not be pleaded in an indictment or proved to a jury beyond a reasonable doubt.

Here, one of the reasons given by the trial court for imposing the upper term is Petitioner's prior criminal convictions. *Ellison*, 2005 WL 1635188 at *1. The trial court noted that, in addition to other factors, Petitioner has numerous prior convictions, a long-standing criminal history and was on parole when the offense was committed.[3] (Ct. Rec. 26 at 9 citing 2 RT 427). The fact of one of Petitioner's prior convictions was sufficient, by itself, to subject Petitioner to the upper term. This is precisely what the California Court of Appeal determined in Petitioner's case.[4]

///

---

[3] Petitioner has not contested the finding that he had prior convictions. That Petitioner was on probation at the time he committed a crime does not, however, come within the *Almendarez-Torres* exception. *Butler*, 528 F.3d at 641.

[4] The California Court of Appeal held that "[s]ince one valid factor in aggravation is sufficient to expose defendant to the upper term (*People v. Cruz* (1995) 38 Cal.App.4th 427, 433), the trial court's consideration of other factors, in addition to the prior convictions, in deciding whether to impose the upper term did not violate the rule of *Apprendi* and *Blakely*." *Ellison*, 2005 WL 1635188 at *1.

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 12

The trial court was free to exercise discretion in sentencing Petitioner as it did and therefore, Petitioner's sentence is not unconstitutional. The sentence was not contrary to, and did not involve an unreasonable application of, clearly established law as determined by the Supreme Court of the United States. No habeas relief is warranted on claim one of Petitioner's petition.

**III. Ineffective Assistance of Counsel**

Petitioner's second and third claims allege ineffective assistance of counsel.

**A. Exhaustion**

As a preliminary issue, Petitioner must have exhausted his state remedies before seeking habeas review: "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). If state remedies have not yet been exhausted, the petition is barred. *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). In order to exhaust state remedies, a petitioner must have raised the claim in state court as a federal claim, not merely as a state law equivalent of that claim. *See, Duncan v. Henry*, 513 U.S. 364, 365-366, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995). The state's highest court must be alerted to and given the opportunity to correct specific alleged violations of prisoners' federal rights. *Id.* (citing *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)). To properly exhaust a federal claim, the petitioner is required to have presented the claim to the state's highest court

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 13

based on the same federal legal theory and the same factual basis as is subsequently asserted in federal court. *Hudson v. Rushen*, 686 F.2d 826, 829-830 (9th Cir. 1982), *cert. denied*, 461 U.S. 916 (1983).

Here, Petitioner raised his ineffective assistance of counsel claims in his habeas petition filed with the California Supreme Court. This petition was denied with citations to *In re Swain*, 34 Cal.2d 300, 304, and *People v. Duvall*, 9 Cal.4th 464, 474 (1995), which constitute a finding that Petitioner failed to provide the California Supreme Court with sufficient detail to support the claims and did not provide all available supporting documents. *See Kelly v. Small*, 315 F.3d 1063, 1069 (9th Cir. 2003) (the state court must be provided with a thorough description of the operative facts in order to allow the state court a fair opportunity to apply controlling legal precedent). Since California law permits Petitioner to resubmit his claims with additional support, the claims are unexhausted and should be barred. Although this failure to exhaust should bar habeas relief with respect to these claims, the claims may also be denied on the merits. Accordingly, the Court will proceed to the merits of the claims.

**B.  Ineffective Assistance of Trial Counsel**

Petitioner's second claim asserts that his trial counsel was deficient by failing to assert that his upper-term sentence violated his rights to a jury trial and to a finding beyond a reasonable doubt. Petitioner argues that his trial counsel's failure to raise this *Blakely* error constituted ineffective assistance of counsel.

In reviewing a claim of ineffective assistance of counsel, the Court applies a two-part test: "First, the defendant must show that

counsel's performance was deficient.  Second, the defendant must show that the deficient performance prejudiced the defense." *United States v. Recio*, 371 F.3d 1093, 1109 (9th Cir. 2004) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)).  Under the first element, the Court must examine "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065.  This requires the Court to analyze counsel's performance with some deference, as "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690, 104 S.Ct. at 2066.  Counsel's performance is not ineffective unless it fails to meet an objective standard of reasonableness under prevailing professional norms.  *Id.* at 688, 104 S.Ct. at 2065.

   Under the second element, it must be shown "that counsel's errors were so serious as to deprive the defendant of a fair trial." *Recio*, 371 F.3d at 1109 (quoting *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.  In other words, "[a] defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  This prejudice evaluation requires an examination of the totality of the evidence presented to the jury in conjunction with a recognition that where there exists "overwhelming record support," a different outcome is less likely. *Id*. at 695-696.  A court reviewing an ineffective assistance of

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 15

counsel claim "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Pizzuto v. Arave*, 280 F.3d 949, 955 (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 697).

As discussed above, Petitioner's argument that his "upper-term" sentence was imposed in violation of *Blakely* is without merit. One of Petitioner's prior convictions was sufficient, by itself, to subject Petitioner to the upper term; therefore, Petitioner's sentence is not unconstitutional. *Supra*. Consequently, Petitioner's claim that his trial counsel was deficient for failing to raise this claim is also without merit. *Gonzalez v. Knowles*, 515 F.3d 1006, 1017 (9th Cir. 2008) (counsel cannot be found to be ineffective for failing to make meritless claims); *Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005) (counsel was not ineffective for failing to make an objection that would have been properly overruled). Petitioner's trial counsel was not deficient for failing to raise the meritless "upper-term" sentencing claim; therefore, Petitioner's ineffective assistance of trial counsel claim shall be denied.

**C. Ineffective Assistance of Appellate Counsel**

Petitioner's third claim alleges the attorney who prepared his appeal did not render constitutionally effective assistance. According to Petitioner, his appellate counsel failed to assert an improper dual usage of aggravating facts by the trial court and failed

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 16

to argue that the trial court improperly weighed the aggravating and mitigating factors.

The test for ineffective appellate assistance claims is set forth in *Smith v. Robbins*, 528 U.S. 259, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). As stated in *Robbins*, the standard for evaluating an ineffective appellate counsel claim is the same as enunciated in *Strickland*. *Robbins*, 528 U.S. at 288; *See also Smith v. Murray,* 477 U.S. 527, 535-536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (applying *Strickland* to claim of attorney error on appeal). Accordingly, to prevail, Petitioner must show that his appellate counsel's performance was objectively unreasonable and, as a result, he suffered prejudice. Petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

In *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), the Court held that appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal. Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on appellate counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent. *See Gray v. Greer,* 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome").

///

Here, Petitioner's upper-term sentence of four years was justified by a prior conviction. *Supra*. The sentence was also properly doubled based on a prior strike under Cal. Penal Code § 667(e)(1). His sentence further included three one-year prison term enhancements, pursuant to Cal. Penal Code § 667.5(b), for each of his three prior prison terms. Petitioner has not demonstrated how this sentence results in an improper "dual use of facts." Accordingly, the Court finds that appellate counsel was not deficient for failing to raise a dual usage of facts claim.

Petitioner's claim that appellate counsel was deficient by failing to raise an objection to the trial court's weighing of aggravating and mitigating factors is likewise without merit. Petitioner does not present what factors the trial court should have considered and weighed or how this would have caused a different result. However, the record shows that the trial court considered the mitigating factor that the victim did not sustain serious injuries and weighed this factor against other considerations, including Petitioner's prior convictions. As discussed above, Petitioner's sentence was properly calculated, and Petitioner has not established that his sentence was unconstitutional.

Petitioner's ineffective assistance of appellant counsel claim is also denied.

**CONCLUSION**

The Court being fully advised, **IT IS HEREBY ORDERED** Petitioner's Amended Petition for Writ of Habeas Corpus (**Ct. Rec. 22**) is **DENIED**. Judgment shall be entered in favor of Respondent and against

Petitioner.  The Court further certifies that pursuant to 28 U.S.C. § 1915(a)(3), an appeal from this decision could not be taken in good faith, and there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED.**  The District Court Executive is hereby directed to enter this order, **enter judgment accordingly**, furnish copies to counsel and **Petitioner** and **CLOSE THE FILE**.

**DATED** this    30th    day of November, 2009.

                          S/Fred Van Sickle
                            Fred Van Sickle
                  Senior United States District Judge